UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAVID GALESKI,

                Plaintiff,

v.

HEIDI WASHINGTON et al.,

                Defendants.

_____/

Case No. 1:25-cv-1603

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington and Hadden. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims for damages against Defendants Ritter and Chevette under § 1983 and individual capacity claims under the Americans with Disabilities Act (ADA). Plaintiff's Eighth Amendment failure to protect claims and ADA failure to accommodate official capacity claims against Defendants Ritter and Chevette remain in the case. The Court will deny Plaintiff's motion for a temporary restraining order and preliminary injunction (ECF No. 3).

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which Plaintiff complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington, and the following IBC staff: Deputy Warden Brian Hadden, Prison Counselor Craig Ritter, and Prison Counselor Unknown Chevette. Defendants are sued in both their individual and official capacities. (Compl., ECF No. 1, PageID.6.)

Plaintiff "was diagnosed as having Gender Dysphoria by the MDOC on July 20, 2021," and identifies as a transgender woman. (*Id.*, PageID.7.)[2] In February 2024, while at IBC, Plaintiff was approved for hormone treatments, which had the result of increasing "Plaintiff[']s feminine appearance and body structure" and causing breast development. (*Id.*, PageID.7–8.) At that time, Plaintiff was granted a special accommodation to allow Plaintiff to remain in housing with other gender dysphoric prisoners. (*Id.*)

After Plaintiff "began the female transition," Plaintiff was routinely harassed by staff and other prisoners. (*Id.*, PageID.8.) Plaintiff filed complaints and grievances with the MDOC and the Michigan Department of Civil Rights and was later "subjected to subjected to targeted pat downs, searches, phobic slurs and destructive cell searches by [non-party officers]" at another correctional facility. (*Id.*, PageID.9.) Plaintiff has been granted "at least 8 protection requests due to physical and sexual threats" while in the MDOC. (*Id.*)

In April 2024, while Plaintiff's special accommodations were in place, Defendants Hadden and Chevette "ignored Plaintiff's grievances and knowingly forced Plaintiff to house in a cell with

---

[2] Plaintiff appears to use they/them pronouns. (*See* Compl., ECF No. 1, PageID.12.)

non-party Inmate Vanness, who is "classified as a highly assaultive male inmate." (*Id.*, PageID.10–11.) Inmate Vanness sexually assaulted Plaintiff multiple times. (*Id.*, PageID.11.)

In September 2024, Plaintiff was forced to stop hormone treatments "due to medical and safety issues that could not be remedied at that time." (*Id.*, PageID.9.) After Plaintiff stopped hormone treatments, "medical services" removed the special accommodations previously granted to Plaintiff. (*Id.*) This resulted in Plaintiff being housed with all male prisoners, subjecting Plaintiff to "sexual abuse, stalking, and harassment." (*Id.*, PageID.10.) Plaintiff requested that the special accommodations be reinstated; however, these requests were denied by the "Gender Dysphoria Committee." (*Id.*) Plaintiff also filed multiple grievances and complaints, which were denied. (*Id.*)

In January 2025, Defendant Chevette forced Plaintiff to share a cell with non-party Inmate Smith, "who is known to be assaultive toward homosexuals." (*Id.*, PageID.11.) Inmate Smith sexually assaulted Plaintiff multiple times. (*Id.*)

In September 2025, Defendant Ritter forced Plaintiff to house in a cell with non-party Inmate Kilpatrick, "classified as a sex offender with a history of assaulting other inmates." (*Id.*) Ritter refused Plaintiff's requests to move to a cell with gender dysphoric inmates. (*Id.*) Inmate Kilpatrick sexually assaulted Plaintiff multiple times. (*Id.*, PageID.12.)

"[D]ue to an unobstructed view into Plaintiff[']s cell," other inmates are able to watch Plaintiff "perform private functions," subjecting Plaintiff to harassment. (*Id.*) Plaintiff feels pressured to hide and decline transgender services as a result. (*Id.*)

Plaintiff brings two itemized claims: (1) Eighth Amendment failure-to-protect claims, including allegations of failure to "adequately train, supervise and/or implement policies;" and (2) claims for violation of the ADA for failing to accommodate Plaintiff's needs as a gender dysphoric

inmate. (*Id.*, PageID.12–16.)[3] Plaintiff seeks monetary, injunctive, and declaratory relief. (*Id.*, PageID.17.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

---

[3] Because Plaintiff specifically identifies the claims that Plaintiff intends to bring in this suit, the Court does not construe Plaintiff's complaint to raise any other claims.

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **Official Capacity Claims for Damages**

Plaintiff brings claims against Defendants in their official as well as individual capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff seeks monetary damages. However, as noted above, the MDOC is not a "person" who may be sued under section 1983 for money damages. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We

7

hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). Therefore, the Court will dismiss Plaintiff's official capacity claims for money damages.

Plaintiff also seeks injunctive and declaratory relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Because Plaintiff seeks prospective injunctive and declaratory relief, Plaintiff's official capacity claims for injunctive relief will be addressed in connection with the substance of Plaintiff's section 1983 claims.

### B. Section 1983 Individual Capacity Claims against Defendants Washington and Hadden

Plaintiff lists Defendant Hadden in the list of parties and describes Defendant Hadden's role within the MDOC (Compl., ECF No. 1, PageID.5), but Plaintiff does not make any factual allegations against Defendant Hadden within the body of the complaint. Where a person or entity is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr.*

8

*Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Plaintiff's only factual allegations against Defendant Washington concern the establishment of a policy acknowledging the safety concerns of gender dysphoric inmates (Compl., ECF No. 1, PageID.7) and the implementation of the Gender Dysphoric Collaborative Review Committee (*id.*, PageID.10). However, neither the establishment of a policy to protect gender dysphoric inmates or the implementation of a committee, generally, could be said to have caused the harms alleged in Plaintiff's complaint. Plaintiff has not alleged any *facts* that would plausibly suggest that Defendant Washington, as MDOC Director, played any role in the work of the Gender Dysphoric Collaborative Review Committee or, specifically, in denying Plaintiff's requests to reinstate his special accommodations. (*See* Compl., ECF No. 1, PageID.10.)

Plaintiff further states that "Defendants failed to adequately train, supervise and/or implement adequate policies and procedures for the housing and placement of vulnerable inmates, including Plaintiff." (*Id.*, PageID.13.) However, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Likewise, "[i]ndividual liability on a failure-to-train or supervise theory 'must be based on more than respondeat superior, or the right to control employees.'" *Zakora v. Chrisman*, 44 F.4th 452, 475 (6th Cir. 2022) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495. A claimed constitutional violation must be based upon

9

active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff's complaint fails to allege any facts concerning the training program provided to IBC staff or lack thereof, that Defendants Washington and Hadden were aware before the incidents described in Plaintiff's complaint that additional training or supervision was needed, or even that the incidents described in Plaintiff's complaint arose because of a lack of training, supervision, or appropriate policy. Plaintiff has not alleged any facts that would demonstrate that Defendants

10

Washington and Hadden knowingly authorized or acquiesced in the decision to deny Plaintiff's requested special accommodations or in the events described in Plaintiff's complaint so as to create liability under section 1983. Accordingly, the Court will dismiss Plaintiff's individual capacity claims against Defendants Washington and Hadden.

### C.    Eighth Amendment Failure to Protect Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

To show liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Here, taking Plaintiff's allegations as true as is required at this stage of the proceedings, the Court will allow Plaintiff to proceed with Eighth Amendment failure to protect claims against Defendants Ritter and Chevette in their individual capacities and in their official capacities for injunctive and declaratory relief.

11

### III.    ADA Failure to Accommodate Claims

Plaintiff also contends that Defendants violated Plaintiff's rights under the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).

First, to address Plaintiff's individual capacity claims, Title II of the ADA applies to state prisons and inmates. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in section 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant in a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). "[N]either the ADA nor the [Rehabilitation Act] impose liability upon individuals." *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004). Therefore, for that reason alone, the Court will dismiss Plaintiff's individual capacity ADA claims.

Second, to bring a claim under a failure to accommodate theory against Defendants in their official capacities,

> a plaintiff must show that the defendant reasonably could have accommodated his disability but refused to do so. *Knox County*[ *v. M.Q.*], 62 F.4th [978, 1000 (6th Cir. 2023)]. Relatedly, the plaintiff must prove that the failure to accommodate impeded his ability to participate in or benefit from a program or service. *Id.* Because failing to grant a reasonable accommodation is itself direct evidence of discrimination, plaintiffs who meet this burden need not provide additional evidence of discriminatory intent. *See, e.g.*, *Keller v. Chippewa Cnty. Bd. of Comm'rs*, 860 F. App'x 381, 385–86 (6th Cir. 2021); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 908–09 (6th Cir. 2004).

*Finley v. Huss*, 102 F.4th 789, 820–21 (6th Cir. 2024).

Plaintiff claims that Defendants acting in their official capacities failed to accommodate Plaintiff's disability of Gender Dysphoria in Plaintiff's housing placement, resulting in Plaintiff being sexually assaulted by Plaintiff's cellmates. At this stage in the proceedings, the Court will allow Plaintiff to proceed with ADA claims for failure to accommodate.

However, Plaintiff's claims against Defendants in their respective official capacities each represent an identical ADA claim against the MDOC. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690, n. 55). Therefore, Plaintiff's official capacity claims are redundant of one another. *See Foster v. Michigan*, 573 F. App'x 377, 389 (6th Cir. 2014). Because Plaintiff's individual capacity claims against Defendants Ritter and Chevette remain in the case, the Court will allow Plaintiff's official capacity claims under the ADA against these Defendants as well. The Court will, however, dismiss as redundant Plaintiff's official capacity claims under the ADA against Defendants Washington and Hadden.

## IV.     Motion for Temporary Restraining Order and Preliminary Injunction

With his complaint, Plaintiff filed an *ex parte* motion for a temporary restraining order and preliminary injunction, asking that the Court order Defendants to provide Plaintiff a "single-cell" or a "gender dysphoric-only cell," establish a procedure that prevents Plaintiff from showering with or around other male inmates, and establish a procedure that allows Plaintiff private use of the toilet. (ECF No. 3, PageID.57–58.)

Preliminary injunctions are "'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Northeast Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the

following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Southern Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *National Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Northeast Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Although the Court will allow Plaintiff to proceed with his Eighth Amendment and ADA claims, Plaintiff has not made such a showing as it relates to his request for a preliminary injunction.

And while the presence of irreparable harm weighs in favor of Plaintiff's request, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286–87. That showing has not been made here. Accordingly, Plaintiff's request for temporary restraining order and preliminary injunction (ECF No. 3) will be denied without prejudice.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Washington and Hadden will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims for damages against Defendants Ritter and Chevette under section 1983, and individual capacity claims under the ADA. Plaintiff's Eighth Amendment failure to protect claims and ADA failure to accommodate official capacity claims against Defendants Ritter and Chevette

15

remain in the case. The Court will deny Plaintiff's *ex parte* motion for a temporary restraining order and preliminary injunction (ECF No. 3) without prejudice.

An order consistent with this opinion will be entered.


Dated:    March 24, 2026                                    /s/ Sally J. Berens
                                                            SALLY J. BERENS
                                                            United States Magistrate Judge